David L. Wales (*Admitted Pro Hac Vice*)
Adam Hollander (*Admitted Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone:    (212) 554-1400
Facsimile:    (212) 554-1444
dwales@blbglaw.com
adam.hollander@blbglaw.com

Robert B. Weiser (*Subject to Admission Pro Hac Vice*)
Brett D. Stecker (*Admitted Pro Hac Vice*)
James M. Ficaro (*Subject to Admission Pro Hac Vice*)
THE WEISER LAW FIRM, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:    (610) 225-2677
Facsimile:    (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

*Co-Lead Derivative Counsel for Plaintiffs*

[Additional counsel on signature page]

| IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH, CENTRAL DIVISION | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC., SHAREHOLDER DERIVATIVE LITIGATION | Civil Case No. 2:14-cv-00107-DB (Cons.)  SHAREHOLDER DERIVATIVE ACTION  PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT |

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ..................................................................................1

II.  BACKGROUND OF THE ACTION ..........................................................................2

    A.  Factual Background ...........................................................................................2

    B.  Procedural Background.......................................................................................3

    C.  Settlement Negotiations .....................................................................................5

    D.  The Settlement Terms ........................................................................................5

III.  ARGUMENT ..............................................................................................................7

    A.  The Procedure for Preliminary Approval of a Derivative Action in Federal
        Courts Is Well Established..................................................................................7

    B.  The Standards for Judicial Approval of Derivative Settlements ...........................7

        1.  The Law Favors Settlements...................................................................7

        2.  The Role of the Court in Approval of a Derivative Settlement .................8

    C.  The Settlement Should Be Preliminarily Approved and Then Finally
        Approved After Notice to Nu Skin Stockholders ....................................................8

        1.  The Settlement Was Fairly and Honestly Negotiated................................9

        2.  The Settlement Was Negotiated When Serious Questions of Law
            and Fact Exist, Placing the Ultimate Outcome of the Litigation in
            Doubt...................................................................................................10

        3.  The Settlement's Value Outweighs the Possibility of Future Relief
            in  View of Serious Risk Posed by Continued Litigation .........................12

        4.  The Parties Agree That the Settlement Is Fair and Reasonable................13

    D.  The Agreement for the Payment of Fees and Expenses Is Appropriate ...............14

    E.  The Proposed Notice to Current Nu Skin Stockholders Is Reasonable................15

IV.  PROPOSED SCHEDULE OF EVENTS.....................................................................16

V.  CONCLUSION ..........................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 CIV. 6302 (CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ....................................15

*In re Apollo Grp., Inc. Sec. Litig.*,
No. 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4,
2008) .........................................................................................................................................12

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6,
1991) .........................................................................................................................................12

*Arace v. Thompson*,
No. 08 CIV. 7905 DC, 2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011)....................................16

*In re Atmel Corp. Derivative Litig.*,
No. C 06-4592 JF (HRL), 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ...................9, 10, 14

*Barovic v. Ballmer*,
No. C14-0540-JCC, 2014 WL 7011840 (W.D. Wash. Dec. 10, 2014) .....................................6

*Berkley Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)....................................................................................................12

*In re Chickie's & Pete's Wage and Hour Litig.*,
No. 12-cv-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ..................................................10

*City of Pontiac Gen. Emps.' Ret. Sys. v. Langone*,
No. 2006-cv-122304 (Fulton County, Ga. June 10, 2008) (ORDER) ....................................15

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .......................................8

*In re F5 Networks, Inc. Derivative Litig.*,
No. 06-0794 (W.D. Wash.) (ORDER).....................................................................................15

*In re Gen. Motors Corp. Derivative Litig.*,
MDL No. 06-1749 (E.D. Mich. Dec. 22, 2008) (ORDER) ....................................................15

*In re Google Inc. S'holder Derivative Litig.*,
No. CV-11-04248 (N.D. Cal. Jan. 21, 2015) (ORDER)...........................................................6

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)..........................................................14

ii

*Jones v. Nuclear Pharmacy, Inc.*,
  741 F.2d 322 (10th Cir. 1984) ................................................8, 9

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ..............................................8

*Maher v. Zapata*,
  714 F.2d 436 (5th Cir. 1983) ............................................ *passim*

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ..............................................8

*Mehling v. N.Y. Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007).............................................9

*Mills v. Elec. Auto-Life Co.*,
  396 U.S. 375 (1970).............................................................14

*In re MRV Commc'ns, Inc. Derivative Litig.*,
  No. CV 08-03800 GAF MANX, 2013 WL 2897874 (C.D. Cal. June 6, 2013) ...............13, 16

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
  797 F.2d 799 (9th Cir. 1986) ..............................................7

*Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..........................................10

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)................................................12

*In re NVIDIA Corp. Derivative Litig.*,
  No. 06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008).......................6, 9, 11

*Officers for Justice v. Civil Service Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..............................................8

*In re PMC-Sierra, Inc. Derivative Litig.*,
  No. 06-05330 RS, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010) ..........................16

*In re Rambus Inc. Derivative Litig.*,
  No. 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)......................6, 7, 15, 16

*Rosenfeld v. Campanelli, et al.*,
  Civil Action No. 13-135711-CZ (Mich. St. Ct., Oakland Cnty. July 7, 2015)
  (ORDER) .........................................................................6

*Rowe v. Fishman*,
  No. 04-4576 (D. Minn. Sept. 6, 2007) (ORDER)..............................15

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .................................................................9

*Unite Nat'l Ret. Fund v. Watts*,
    No. CIV.A. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 29, 2005) .............15

*Villanueva v. Morpho Detection, Inc.*,
    No. 13-cv-05390, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ....................9, 15

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986) .....................................................................8

*Warner v. Lesar*,
    No. 2011-09567, (Tex. Dist. Ct., Harris Cnty. Oct. 1, 2012) (ORDER) ................15

*Williams v. First Nat'l Bank*,
    216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910) .....................................7

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ..................................................................8

## STATUTES

8 Del. C. § 220 .........................................................................................4

Fed. R. Civ. P. 23.1 ...................................................................................8

Fed. R. Civ. P. 23.1(c) ...............................................................................16

## OTHER AUTHORITIES

*Manual for Complex Litigation* § 23.14 (3d ed. 1995) ......................................7

I.      PRELIMINARY STATEMENT

This memorandum is submitted by Plaintiffs Analisa Suderov ("Suderov") and Amos C. Acoff ("Acoff" and collectively with Suderov "Co-Lead Plaintiffs") in support of preliminary approval of the proposed settlement (the "Settlement") of the derivative claims brought on behalf of Nu Skin Enterprises, Inc. ("Nu Skin" or the "Company") against certain of its officers and directors.  The terms of the settlement are set forth in the July 7, 2016 Stipulation and Agreement of Settlement (the "Stipulation").[1]

The Settlement completely and finally resolves the derivative claims in the above captioned action (the "Action"). The Settlement is the result of extensive arm's-length negotiations between the parties (the "Parties") who were assisted by a highly-experienced mediator and retired U.S. District Court Judge, the Honorable Layn R. Phillips, (the "Mediator" or "Judge Phillips").   In sum, as a result of the pendency and settlement of the Action, Defendants have agreed to adopt a series of significant corporate governance measures that directly address Co-Lead Plaintiffs' allegations and are designed to preclude the recurrence of the wrongdoing alleged in the Action (the "Reforms").   The negotiation of the Reforms was hard-fought by very sophisticated parties, and as such, the Parties strongly submit that the Settlement constitutes an appropriate resolution of a case of substantial complexity.

As such, the Settlement confers substantial benefits upon Nu Skin and Current Nu Skin Stockholders and is an excellent resolution for Nu Skin. As a result of the comprehensive benefits obtained in the Settlement, Nu Skin and Current Nu Skin Stockholders are positioned to reap the long-term benefits of strong corporate governance by virtue of these new processes.

Co-Lead Plaintiffs currently ask the Court to enter the [Proposed] Preliminary Approval

---

[1]      Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation which is attached hereto as Exhibit 1.

1

Order (the "Preliminary Order"), attached to the Stipulation as Exhibit B, (a) granting preliminary approval of the Settlement, (b) directing that notice be provided to Current Nu Skin Stockholders, and (c) scheduling a final hearing, at which the Court will consider final approval of the Settlement.  In determining whether preliminary approval is warranted, the narrow issue before the Court is whether the Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current Nu Skin Stockholders and that a hearing be scheduled for final settlement approval.

## II.     BACKGROUND OF THE ACTION

### A.     Factual Background

Nu Skin is a global direct selling company with operations in over 50 markets worldwide. The Company purports to develop and distribute premium quality anti-aging personal care products and nutritional supplements under its Nu Skin and Pharmanex brands.  The Company primarily sells its products through direct selling.  The Company generally relies on independent salespeople called "distributors."  This is commonly known as multi-level marketing, and it is illegal in the People's Republic of China ("China" or "PRC").  In China, however, Individual Defendants have said that the Company employs sales personnel who sell through physical stores as well contract with direct sellers who sell through direct sales where permitted.

The Action alleges that, from at least 2012, the Individual Defendants caused and or allowed the Company's operations in China to function as a pyramid scheme, in violation of PRC law against multi-level marketing.  Moreover, the Action alleges that the Individual Defendants failed to disclose this fact in the Company's filings with the United States Securities and Exchange Commission ("SEC"), rendering these financial statements false and misleading at all relevant times.

As a result of this alleged conduct, the Action alleges that China's State Administration for Industry and Commerce announced an investigation on January 15, 2014 into allegations that Nu Skin distributed false information and was conducting illegal business practices in China. Days later, China's Ministry of Commerce announced that it too was investigating Nu Skin China's business practices.

The Complaint alleges that the Company violated Chinese anti-multi-level marketing laws. The Complaint also alleges that on January 16, 2014, the Company initiated an internal investigation, and on January 21, 2014, the Company disclosed that it had found violations of Company policy and rules by sales employees in China. Individual Defendants announced that the Company would temporarily suspend accepting applications for any new distributors in China. On March 3, 2014, Individual Defendants announced that Nu Skin temporarily suspended all business promotional meetings as well as applications for new sales representatives.

The Action alleges that these events substantially harmed the Company, resulting in decreased revenues from China, an over 50% reduction in sales leaders in China, downgrades from securities analysts, and the suspension of business meetings and sales representatives, combined with heightened government scrutiny.

### B.    Procedural Background

On February 14, 2014, the first of four shareholder derivative actions brought on behalf of Nu Skin were filed in this Court. On April 30, 2014 the Court consolidated those actions into the Action, and appointed plaintiffs Suderov and Acoff as Co-Lead Plaintiffs in the Action and appointed Bernstein Litowitz Berger & Grossmann LLP and The Weiser Law Firm, P.C. as Co-Lead Counsel in the Action.

Shortly thereafter, Plaintiffs' Co-Lead Counsel associated with other counsel that had conducted an investigation of Nu Skin's corporate books and records pursuant 8 Del. C. § 220 ("Section 220"). Nu Skin agreed to produce certain non-public documents under the terms of a confidentiality agreement pursuant to the Section 220 request. These 220 documents included Nu Skin board minutes, board packages and other information provided to the Nu Skin Board of Directors (the "Board").

On August 4, 2014, Co-Lead Plaintiffs filed the Verified Consolidated Shareholder Derivative Complaint (the "Complaint") under seal. The Complaint contained allegations based on an extensive investigation conducted by Co-Lead Counsel, including interviews of numerous witnesses, the hiring of private investigators in China who interviewed witnesses in China, translation of Chinese language documents, and information derived from and citations to certain non-public documents obtained pursuant to Section 220. The Complaint asserted claims against certain of the Individual Defendants for misappropriation of information with respect to certain sales of Company stock and claims against all of the Individual Defendants for breach of fiduciary duty and unjust enrichment.

On September 24, 2014, Defendants moved to dismiss the Complaint for failure to plead that pre-suit demand was excused on the Board, or in the alternative, to stay the Action pending resolution of the related federal securities class action, captioned *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 2:14-cv-00033-DB (the "Securities Action") also pending before this Court. The motion to dismiss or in the alternative to stay the Action was fully briefed.

The Court heard oral argument on July 17, 2015 and on July 20, 2015 entered an order staying the Action pending the outcome of the Securities Action.

### C.    Settlement Negotiations

Beginning in February 2016, the Parties began to discuss the potential for resolution of the Action, and thereafter engaged in extensive communications and efforts aimed at reaching a settlement.  Following preliminary settlement discussions held in February and March 2016, on April 6, 2016, Plaintiffs' Co-Lead Counsel sent a detailed, formal settlement demand to counsel for Defendants, outlining the terms under which Plaintiffs would agree to settle the Action.

Negotiations between the Parties continued over the following weeks, overseen by an experienced mediator, Judge Phillips.  As a result of these negotiations, the Parties were ultimately able to reach an agreement to resolve the Action.  In addition to the extensive pre-filing investigation conducted, for purposes of confirmatory discovery, Defendants produced to Plaintiffs, and Plaintiffs reviewed: (a) six deposition transcripts from the Securities Action and (b) confidential, non-public documents spanning nearly 4,600 pages.  As a condition of the settlement reflected in the Stipulation, Nu Skin will agree to institute and maintain the Reforms, which are fully set forth in Exhibit A to the Stipulation.

### D.    The Settlement Terms

As a result of Co-Lead Plaintiffs' prosecution and settlement of the Action, Nu Skin will adopt the Reforms, which are specifically tailored to address the allegations in the Action and to improve Nu Skin's internal controls.  *Id*. ¶2.1, Exhibit A.  Specifically, since the allegations in the Complaint (as well as the allegations in the Securities Action) focus on alleged lack of compliance with the anti-marketing laws in China, and China and the overseas markets comprise such a large portion of Nu Skin's sales and revenues, the Reforms focus on ensuring future compliance with the laws of foreign countries.

The Reforms include, among other things, (i) the appointment of International Compliance Officers for each of Nu Skin's Asian, EMEA (Europe, Middle East and Africa), and Americas regions – with responsibility for compliance with the laws and regulations in the countries they oversee, as well as reporting to the Nominating and Governance Committee of the Board; (ii)  substantive amendments to the charter for the Board's Nominating and Corporate Governance Committee, reflecting enhanced oversight of the Company's international compliance responsibilities, including compliance with laws and regulations, education, review of complaints, coordination with non-US regulatory agencies, and reporting from the international compliance officers; (iii) the appointment of a new independent director to the Board; and (iv) increased disciplinary authority, including for violations of foreign law.  *Id*. Defendants agree that the filing and prosecution of the Action was the cause of the Reforms and that the Reforms confer a material benefit on the Company.  Stipulation at ¶2.1.

Corporate governance reforms like those achieved here have formed the basis of settlements of countless stockholder derivative actions, as strong corporate governance is fundamental to a corporation's well-being and success.[2]  Indeed, "[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies."  *In re NVIDIA Corp. Derivative Litig.*, No. 06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (citation omitted); *accord In re Rambus Inc. Derivative Litig.*, No. 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (recognizing that the "substantial

---

[2]    *See*, *e.g., In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248. Order (N.D. Cal. Jan. 21, 2015) (approving settlement where relief was in the form of corporate governance enhancements); *Barovic v. Ballmer*, No. C14-0540-JCC, 2014 WL 7011840 (W.D. Wash. Dec. 10, 2014) (same); *Rosenfeld v. Campanelli, et al.*, Civil Action No. 13-135711-CZ Final Order and Judgment (Mich. St. Ct., Oakland Cnty. July 7, 2015) (same).  *See* Exhibit 4.

benefits" of the derivative settlement which "provides long term remedial measures that are specifically designed to protect the shareholders.").

## III.   ARGUMENT

### A.   The Procedure for Preliminary Approval of a Derivative Action in Federal Courts Is Well Established

As stated in the *Manual for Complex Litigation* § 23.14, at 171 (3d ed. 1995), "[f]irst, the court reviews the [proposed settlement] preliminarily to determine whether it is sufficient to warrant public notice and a hearing."  The preliminary approval criteria are as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* at §30.41, at 237.

The proposed settlement meets the foregoing criteria for notice as it is eminently fair, reasonable, and adequate and should be preliminarily approved by the Court.

### B.   The Standards for Judicial Approval of Derivative Settlements

#### 1.   The Law Favors Settlements

There is a strong policy favoring compromises which resolve litigation (*see, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986)), including compromises which resolve shareholder derivative actions.  *See Maher v. Zapata*, 714 F.2d 436 (5th Cir. 1983). Derivative actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation.  *Id.* at 455 (settlements of derivative actions are particularly favored because such litigation is "'notoriously

7

difficult and unpredictable'") (citation omitted).   Settlements of derivative actions are "favored for the reasons that settlements generally are favored: disputes are resolved; the resources of litigants and the courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).

2.   <u>The Role of the Court in Approval of a Derivative Settlement</u>

The settlement of a derivative action requires court approval.  Fed. R. Civ. P. 23.1.  In this regard, the court must determine in its discretion whether a settlement is fair, reasonable, and adequate.  *Maher*, 714 F.2d at 455; *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  The proposed settlement enjoys a presumption that it is fair and reasonable, because it is the product of extensive arm's-length negotiations conducted by capable counsel who are well-experienced in class and derivative actions.  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's-length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable.") (citations omitted); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (same).

**C.   The Settlement Should Be Preliminarily Approved and Then Finally Approved After Notice to Nu Skin Stockholders**

The Tenth Circuit has provided factors the court should look to when determining if a settlement is fair, reasonable, and adequate; they are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery

outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324 (citing *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976)); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).   The district court must exercise "sound discretion" in approving a settlement.  *Id.* at 1186-1187.  As explained herein, applying these criteria demonstrates that this Settlement warrants the Court's preliminary and final approval.

### 1.   The Settlement Was Fairly and Honestly Negotiated

A settlement enjoys a presumption of fairness if it "is recommended by … counsel after arm's-length bargaining."  *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted).  Here, the Settlement was reached after extensive arm's-length negotiations between counsel for the Parties and overseen by an experienced mediator, Judge Phillips.[3]   These negotiations included several negotiation sessions concerning Plaintiffs' settlement demand and in addition to Plaintiffs' extensive pre-filing investigation, included the Plaintiffs' review of six deposition transcripts from the Securities Action and confidential, non-public documents spanning nearly 4,600 pages produced by Nu Skin.  *See* Stipulation at I.§C.  This factor thus weighs in favor of preliminary approval of the proposed Settlement.  *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (derivative settlement preliminarily approved where the settlement "appears to be the result of good faith arm's-length bargaining.");  *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007) (settlement

---

[3]      "Judge Phillips' participation weighs considerably against any inference of a collusive settlement."  *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (citations omitted).

preliminarily approved where the parties engaged in "hard-fought and lengthy negotiation[s]" that lasted more than one year).[4]

Furthermore, the Parties did not begin negotiating the Fee Award until after all of the substantive terms of the Settlement were agreed upon.  In fact, it was the result of a mediator's recommendation.  *See* Stipulation ¶5.1.  This factor further demonstrates the fairness of the arm's-length Settlement because "the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery."  *In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).

> ### 2. The Settlement Was Negotiated When Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

The uncertainties and vagaries of further litigation of the Action demonstrate that the proposed Settlement is within the range of approval, and that Plaintiffs' Motion should be granted.  Although Plaintiffs believe that their claims were meritorious, there existed significant risks in continuing to prosecute the Action.

For example, as the Court is aware, Plaintiffs did not make a pre-suit litigation demand for action by the Board.  Whether Plaintiffs sufficiently alleged with particularity that pre-suit demand on the Board would have been futile was the subject of Defendants' September 25, 2014 motion to dismiss, or in the alternative, to stay the Action and the vigorous briefing and oral argument that followed.  *See* ECF Nos. 61, 71, 80, 88.  Judge Benson, without deciding the issue, indicated that the motion to dismiss was a strong motion.  Absent the Settlement, Plaintiffs will

---

[4]     Moreover, the arm's-length negotiation of the Settlement was conducted by highly-qualified counsel with extensive experience in stockholder derivative litigation which militates in favor of preliminarily approving the Settlement.  *See, e.g.*, *Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation."); *Atmel*, 2010 WL 9525643, at *13 ("the involvement of multiple counsel from different firms suggests a lack of collusion.").

face a similar motion again.

Assuming demand futility could be overcome, proving breaches of fiduciary duty by the Board would be hard fought and difficult. Even if liability were established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (preliminarily approving the derivative settlement after balancing the risks faced by plaintiffs and defendants). Plaintiffs' Counsel also considered the best interests of Nu Skin, as the Action is brought on its behalf, including the risks that on-going litigation could result in loss or substantial diminution of available D&O insurance and financial hardship to Nu Skin with risk that the Individual Defendants (absent insurance) would be unable to satisfy fully any judgment that might be entered in the Action.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. Add to this post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial and the benefits of the Settlement become all the more apparent. The proposed Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing Nu Skin with substantial benefits immediately. *See, e.g.*, *Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to Zapata from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[5]

---

[5]     *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and nonmonetarily in the form of disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval." *Maher*, 714 F.2d at 467.

3.      The Settlement's Value Outweighs the Possibility of Future Relief in View of Serious Risk Posed by Continued Litigation

As discussed herein, the settlement of the Action provides substantial benefits to Nu Skin in the form of enhanced corporate governance provisions that directly address the wrongdoing alleged and attempt to prevent future reoccurrences. The determination of a "reasonable" settlement is not susceptible to a singular definition, rather, as one circuit court explained, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Given the obstacles and uncertainties inherent in this complex Action, the Settlement is an excellent result and is unquestionably superior to another "possibility" which certainly exists – little or no recovery.  It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal.  Substantial judgments awarded by trial courts have been reversed on appeal.  *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (jury verdict in favor of plaintiffs vacated and judgment as a matter of law entered in favor of defendants); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict in favor of plaintiff overturned and j.n.o.v. entered in favor of defendant); *Berkley Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).  Add to these appellate risks the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact-finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

Another factor in favor of the Settlement is the complexity, expense and likely duration of the litigation. The Action is obviously complex.  If not for this Settlement, the Action would have continued to be fiercely contested by the parties.  Continued litigation here would be

12

extremely complex, costly and of substantial duration. Assuming Plaintiffs survived Defendants' attack on the pleadings, document discovery would need to be completed, depositions would have to be taken, experts would have to be designated, and expert discovery conducted. Defendants' expected second motion for dismissal would have to be briefed and argued, and if Plaintiffs prevailed, a pre-trial order would have to be prepared and motions *in limine* would have to be filed and argued. A trial could occupy attorneys on both sides and the Court for weeks, if not months. Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeal, which would prolong the case for years with the ultimate outcome uncertain.

In light of the complexity of the Action, and the time and expense burdens continued litigation would undoubtedly produce, the Settlement should be preliminarily approved.

4.      The Parties Agree That the Settlement Is Fair and Reasonable

Highly-experienced counsel, operating at arm's length, have weighed all of the foregoing factors and endorse the Settlement. *See* firm biographies of Plaintiffs' Co-Lead Counsel attached hereto as Exhibits 2-3. As courts have noted, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF MANX, 2013 WL 2897874, at *5 (C.D. Cal. June 6, 2013). Plaintiffs and Defendants, acting by and through the Board, and the counsel for each, have independently considered the Settlement and all agree that it is in the best interests of the Company and Current Nu Skin Stockholders. *See* Stipulation §§II-III; ¶2.2.

Here, Plaintiffs' Counsel and Defendants' counsel are seasoned practitioners in shareholder litigation. The Settlement was reached only after counsel had the opportunity to consider the relative strengths and weaknesses of their respective cases and were able to reach

the agreement embodied in the Stipulation after long and protracted settlement negotiations overseen by Judge Phillips.  The Parties believe that the Settlement is an excellent result for Nu Skin and Current Nu Skin Stockholders and, therefore, recommend its approval.

For all of the foregoing reasons, Plaintiffs respectfully submit that the Settlement should be preliminarily approved and the Preliminary Order should be entered.

### D.    The Agreement for the Payment of Fees and Expenses Is Appropriate

Last, the agreed-to amount of attorneys' fees to be paid to Plaintiffs' Counsel is fair and reasonable.  In recognition of the substantial benefits bestowed upon Nu Skin as a result of Plaintiffs' Counsels' efforts, Nu Skin agreed to pay Plaintiffs' Counsel $1,275,000 in attorneys' fees and expenses (the "Fee Award"), as attorneys who prosecute a shareholder derivative action that confers "substantial benefit" on the corporation are entitled to an award of attorneys' fees.  *See Mills v. Elec. Auto-Life Co.,* 396 U.S. 375 (1970).  The Parties negotiated the Fee Award only after the substantive terms of the Settlement were agreed to and ultimately agreed on the amount of the Fee Award after accepting a Mediator's proposal from Judge Phillips.  Moreover, the United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues in these kinds of cases as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation.  ***Ideally, of course, litigants will settle the amount of a fee***."  (Emphasis added.)

In shareholder derivative cases, where the economic value of corporate therapeutic benefits can be difficult to precisely quantify, an agreement on the parameters of a fee and expense award is particularly appropriate and regularly approved by courts.  *See Atmel*, 2010 WL 9525643, at *11 ("the Court concludes that the agreed-upon amount of attorneys' fees and costs … is reasonable in light of the overall benefit of the settlement to Atmel and its shareholders.");

14

*Rambus*, 2009 WL 166689, at *3 ("Attorneys who prosecute a shareholder derivative action that confers 'substantial benefit' on the corporate are entitled to an award of attorneys' fees … [C]ourts consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief.") (citations omitted).[6]

### E.     The Proposed Notice to Current Nu Skin Stockholders Is Reasonable

The purpose of providing stockholders notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Villanueva*, 2015 WL 4760464, at *7 (citation omitted).  The Parties have agreed, subject to Court approval, that Nu Skin will notify Current Nu Skin Stockholders of the proposed Settlement by: (i) causing a Form 8-K to be filed with the SEC that contains the contents of the Summary Notice, attaching a copy of the Stipulation to the 8-K and providing a link in the 8-K to the Stipulation and Notice that shall be posted on the Investor portion of Nu Skin's website; and (ii) publishing the Summary Notice one time in *Investor's Business Daily* ("*IBD*").  *See* Stipulation ¶3.2.

The proposed forms of notice (attached as Exhibits C and D to the Stipulation) set forth, *inter alia*, the date and location of the final Settlement Hearing, the Parties' contentions, the

---

[6]     *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Langone*, No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008) (awarding $14.5 million fee); *Unite Nat'l Ret. Fund v. Watts*, No. CIV.A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 29, 2005) (awarding $9.2 million fee); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (CM), 2010 WL 363113, at *1 (S.D.N.Y. Feb. 1, 2010) ($8.8 million fee); *Warner v. Lesar*, No. 2011-09567, Order Approving Settlement and Judgment (Tex. Dist. Ct., Harris Cnty. Oct. 1, 2012) (awarding $7.75 million fee); *In re Gen. Motors Corp. Derivative Litig.*, MDL No. 06-1749, Order Approving Settlement (E.D. Mich. Dec. 22, 2008) (awarding $5.38 million fees); *In re F5 Networks, Inc. Derivative Litig.*, No. 06-0794 (W.D. Wash.) (awarding $5 million fee); *Rowe v. Fishman*, No. 04-4576 (D. Minn. Sept. 6, 2007) ($5.25 million fee).  *See* Exhibit 5.

reasons for the Settlement, and the procedure for objecting to the Settlement, including the Fee Award. *See* Stipulation, Exhibits C & D. Accordingly, Plaintiffs respectfully submit that the proposed forms of notice fully satisfy Fed. R. Civ. P. 23.1(c) and due process requirements, as they will fairly and reasonably apprise Current Nu Skin Stockholders of the essential terms of the Settlement and afford them an opportunity to present any objections thereto. Indeed, numerous courts have approved similar forms of notice and notice distribution plans in connection with settlements of other derivative actions, thus confirming that the Parties' proposed notice plan here is appropriate. *See, e.g., Arace v. Thompson*, No. 08 CIV. 7905 DC, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (approving notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website); *Rambus*, 2009 WL 166689, at *2 (approving settlement where notice was published on company website and in a press release carried on *Business Wire*, and filed in an 8-K with the SEC); *MRV Commc'ns*, 2013 WL 2897874, at *1 (approving notice filed as an attachment to a Form 8-K, published on company website, and published for one day in *IBD*); *In re PMC-Sierra, Inc. Derivative Litig.*, No. 06-05330 RS, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice via filing with the SEC, posting on company's website, and single day publication in the national edition of *IBD*).

## IV.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs, with the consent of the Defendants, request that the Court: (i) grant preliminary approval of the Settlement; (ii) approve, as to form and content, the Notice and Summary Notice, annexed as Exhibits C and D to the Stipulation; (iii) hold that the filing of a Form 8-K attaching the Notice, publication of the Notice on the Company's website, and publication of the Summary Notice once in the national edition of *IBD* complies with due process and the rules of this Court,

16

is the best notice practicable under the circumstances, and shall constitute due and sufficient notice for all purposes to Current Nu Skin Stockholders; and (iv) set a date for the Settlement Hearing.  The Parties propose the following schedule:

| | |
|---|---|
| Summary Notice issued once in the national edition of *Investor's Business Daily* | Within 10 business days after entry of the Preliminary Approval Order |
| Filing of Notice via Form 8-K with the SEC | Within 10 business days after entry of the Preliminary Approval Order |
| Posting of Notice on Nu Skin's website | Within 10 business days after entry of Preliminary Approval Order |
| Last day for counsel for Nu Skin to file appropriate affidavit with respect to preparation and dissemination of Notice and Summary Notice | At least 10 business days prior to Settlement Hearing |
| Filing of all papers in support of the Settlement, including the Fee Award | 28 calendar days prior to the Settlement Hearing |
| Last day for Current Nu Skin Stockholders to comment on the Settlement | 14 calendar days prior to the Settlement Hearing |
| Filing of all reply papers in support of the Settlement, including responses to objections, if any | 7 calendar days prior to the Settlement Hearing |
| Final Settlement Hearing | Approximately 45 days after the Notice Date[7] |

## V.     CONCLUSION

The Settlement is an outstanding resolution of a case of substantial complexity and costs. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and the issuance of the Notice and Summary Notice, and schedule the Settlement Hearing to consider final approval of the Settlement.

---

[7]     Plaintiffs are prepared to coordinate a mutually agreeable date with the Court's Deputy Clerk for inclusion in the Preliminary Approval Order prior to entry.

Dated:  July 19, 2016

Respectfully submitted,

/s/ P. Matthew Muir

_____

Blake D. Miller (#4090)
P. Matthew Muir (#9560)
MILLER TOONE, P.C.
165 South Regent Street
Salt Lake City, UT 84111
Telephone:   (801) 363-5600
Facsimile:    (801) 363-5601
miller@millertoone.com
muir@millertoone.com

*Derivative Liaison Counsel for Plaintiffs*

David L. Wales (*Admitted Pro Hac Vice*)
Adam Hollander (*Admitted Pro Hac Vice*)
BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone:   (212) 554-1400
Facsimile:    (212) 554-1444
dwales@blbglaw.com
adam.hollander@blbglaw.com

Robert B. Weiser (*Subject to Admission Pro Hac Vice*)
Brett D. Stecker (*Admitted Pro Hac Vice*)
James M. Ficaro (*Subject to Admission Pro Hac Vice*)
THE WEISER LAW FIRM, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:   (610) 225-2677
Facsimile:    (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

*Co-Lead Derivative Counsel for Plaintiffs*

Jeffrey C. Block
Jason M. Leviton
BLOCK & LEVITON LLP
155 Federal Street, Suite 400
Boston, MA 02110
Telephone:   (617) 398-5600
Facsimile:    (617) 507-6020
jeff@blockesq.com
jason@blockesq.com

Laurence Rosen
Phillip Kim
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone:   (212) 686-1060
Facsimile:    (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

Joshua M. Lifshitz
Edward W. Miller
LIFSHITZ & MILLER
821 Franklin Avenue, Suite 209
Garden City, NY 11530
Telephone:   (516) 493-9780
Facsimile:    (516) 280-7376
jml@jlclasslaw.com
ewm@jlclasslaw.com

*Executive Committee Derivative Counsel for Plaintiffs*

Frank R. Schirripa
John A. Blyth
HACH ROSE SCHIRRIPA & CHEVERIE LLP
185 Madison Avenue, 14th Floor
New York, NY 10016
Telephone:   (212) 213-8311
Facsimile:    (212) 779-0028
fschirripa@hrsclaw.com
jblyth@hrsclaw.com

*Associated Derivative Counsel for Plaintiffs*